# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Case No.: 3:21-CR-00205 |
| Plaintiff, | ) ) ) | Judge Zouhary |
| v. | ) ) ) | **DEFENDANT'S RESTITUTION MEMORANDUM** |
| Kevin Clay, | ) ) | Richard M. Kerger (0015864) |
| Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | THE KERGER LAW FIRM, LLC. 4159 N. Holland-Sylvania Rd., Suite 101 Toledo, OH 43623 Telephone: (419) 255-5990 Fax: (419) 255-5997 rkerger@kergerlaw.com  Joshua S. Lowther (460398) LOWTHER + WALKER, LLC 101 Marietta Street, N.W., Suite 3325 Atlanta, GA  30303 Telephone: (404) 496-4052 Fax: (866) 819-7859 jlowther@lowtherwalker.com  *Attorneys for Defendant Kevin Clay* |

Pursuant to the Court's October 30, 2023 Minute Order, Defendant Kevin Clay respectfully submits this memorandum in support of his proposed restitution order. As further explained below, the Court should order restitution as follows:

| **Entity** | **Restitution** |
|---|---|
| Fiat Chrysler Automobiles/Stellanits ("Chrysler") | $210,497.97 |

1. <u>Chrysler</u>. The Final Presentence Investigation Report ("PSIR") recommends $7,159,795.00 in restitution to Chrysler. PSIR ¶ 88. It would be error to order Mr. Clay to pay all or substantially all of this amount, for two reasons. First, the PSIR's restitution request rests on an inflated actual loss amount that includes reimbursements for medically necessary prescriptions. Chrysler's actual loss for restitution should not exceed the actual loss the Court calculated at sentencing, which deducted those prescriptions. Second, the record does not support apportioning the bulk of Chrysler's actual loss to Mr. Clay under 18 U.S.C. § 3664(h). As explained below, utilizing the correct loss amount and a reasonable apportionment across the alleged coconspirators, Mr. Clay's restitution obligation to Chrysler should not exceed $210,497.97.

      (a.) *Calculation of Chrysler's Actual Loss*

The PSIR's $7,159,795.00 restitution recommendation derives from calculations in Chrysler's victim impact statement, which was appended to an interim version of the PSIR that was filed under seal at docket 85-1. This amount is slightly less than the $7,718,422.29 loss that Probation calculated for sentencing purposes. PSIR ¶ 29. Probation derived that latter amount from Trial Exhibit 43, which the PSIR describes as "the total pharmacy reimbursements for prescriptions written by Dr. Huenefeld in the course of the conspiracy." *Id.* Trial testimony showed that all of the prescriptions in Trial Exhibit 43 were submitted to CVS Caremark as Chrysler's Pharmacy Benefit Manager and were ultimately paid by Chrysler. 5/19/23 Tr. 21-22, 26-28.

At sentencing, the Court found that the PSIR overstated the actual loss because the complete trial record showed that some of the prescriptions were medically necessary. PSIR ¶ 29. As explained in Defendant's sentencing memorandum, where a

2

health care fraud scheme includes some claims for legitimate medical services, the sentencing court usually should not include legitimate claims in its loss calculation. *See* Clay Sentencing Memo 15-16, ECF 90 (citing cases). After deducting for medically necessary prescriptions, the Court thus found that the actual loss for sentencing was more than $1,500,000 but less than $3,500,000. *See* PSIR ¶ 29; U.S.S.G. § 2B1.1(b)(1). Data in Chrysler's victim impact statement showed that the best estimate of its reimbursements for potentially fraudulent claims during the period TheraMedical operated was $2,104,979.73. *See* ECF 90 at 16-17.

The same principles that required a reduction in the loss amount at sentencing for medically necessary prescriptions apply equally to restitution. The Mandatory Victim Restitution Act "require[s] that the restitution award be based on the amount of loss *actually caused* by the defendant's offense." *United States v. Boring*, 557 F.3d 707, 713 (6th Cir. 2009) (citation omitted) (emphasis in original). A court lacks the power to order restitution in excess of a victim's actual loss. *See United States v. White*, 492 F.3d 380, 418 (6th Cir. 2007) ("[T]he loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." (citation omitted)).

When calculating actual loss from a fraud scheme, courts apply the same causation principles at sentencing and restitution. *See United States v. Stein*, 846 F.3d 1135, 1153 (11th Cir. 2017) (wire fraud) (loss causation inquiry is "essentially the same" for both). Because of the similarity of the actual loss inquiries under the MVRA and the Guidelines, "restitution and Guidelines-loss figures often mirror one another when the Guidelines calculation is based on actual (rather than intended) loss," even if they need not perfectly align in every case. *United States v. Dadyan*, 76 F.4th 955, 959 (9th Cir. 2023); *accord United States v. Mehmood*, 742 F. App'x 928, 943 (6th Cir. 2018) (noting

that "[a]lthough restitution and loss are not one and the same, it is permissible for the district court to base its order of restitution on the actual loss calculated for the purpose of sentencing," and remanding for recalculation of loss for both sentencing and restitution in light of error in including medically necessary claims when calculating loss for health care fraud).[1]

Here, there is no reason for the actual loss amount at sentencing and restitution to diverge. At sentencing, the Court found that the actual loss from the health care fraud counts was more than $1,500,000 but less than $3,500,000. *See* PSIR ¶ 29; U.S.S.G. § 2B1.1(b)(1). As reflected in the PSIR and Trial Exhibit 43, the reimbursements from Chrysler drove substantially all of that loss amount. Awarding Chrysler restitution totaling $7,159,795.00 across the alleged coconspirators in this case would create an irreconcilable conflict between the Court's factual findings at sentencing and restitution, and would violate the MVRA's command that restitution orders may not exceed a victim's actual loss. *White*, 429 F.3d at 418 (vacating restitution order based on an overstated loss amount). Because Chrysler suffered no more than $2,104,979.73 in actual loss, *see* ECF 90 at 17, the Court should not order more than that total amount across the alleged coconspirators' cases.

(b.) *Apportionment Across Alleged Coconspirators*

Under 18 U.S.C. § 3664(h), Mr. Clay should be ordered to pay only a portion of Chrysler's $2,104,979.73 actual loss that reflects his "level of contribution to [Chrysler's] loss" and "economic circumstances." 18 U.S.C. § 3664(h). "In cases involving multiple

---

[1] There are circumstances not present here that may warrant a different loss amount for sentencing and restitution. For example, whereas the commentary to the Sentencing Guidelines permits a court to assess intended loss, restitution is limited to victims' actual losses. *Compare* U.S.S.G. § 2B1.1 cmt. n.3(A) *with Boring*, 557 F.3d at 713.

4

defendants, § 3664(h) explicitly gives district courts discretion as to whether they should apply joint and several liability or whether liability should be apportioned among the defendants based on their economic circumstances and their respective contributions to the victims' losses." *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008); *see also United States v. Bailey*, 973 F.3d 548, 576 (6th Cir. 2020) (noting that, even in a conspiracy case, "§ 3664(h) allows the district court to make multiple defendants jointly responsible for payment of restitution or to apportion to each defendant her own share"). The choice between joint and several liability among multiple coconspirators or individual apportionment under § 3664(h) is a binary "choice between two options." *United States v. Ochoa*, 58 F.4th 556, 561 (1st Cir. 2023).

Here, the Court has already chosen to apportion restitution to Chrysler among the alleged coconspirators under § 3664(h) rather than order restitution jointly and severally. *See* Supplemental Order Re: Forfeiture & Restitution ¶¶ 3-4, *United States v. Maluchnik*, No. 3:20-cr-451-JZ (N.D. Ohio Oct. 31, 2023), ECF 30 (invoking § 3664(h) to "apportion[]" Mr. Maluchnik's restitution obligation to Chrysler).[2] Having exercised that discretion, the Court is constrained also to apportion Mr. Clay's restitution obligation under § 3664(h). That provision sets forth only two considerations relevant to apportionment—the defendant's "level of contribution to the victim's loss and [the defendant's] economic circumstances." 18 U.S.C. § 3664(h). Whether a defendant cooperated and pled guilty, or whether he exercised his constitutional right to a jury trial, is not a relevant consideration under the statute.

The record in this case permits only a minor apportionment to Mr. Clay for Chrysler's loss. Mr. Clay's contribution to that loss was minor when compared to each

---

[2] The Court's restitution order in Mr. Maluchnik's case is attached hereto as Exhibit A.

5

of his three alleged coconspirators: Matthew Maluchnik, Loni Peace, and Dr. Suzette Huenefeld. Although Mr. Maluchnik and Mr. Clay were co-founders of TheraMedical, the trial record and Mr. Maluchnik's pretrial statements to government investigators show that Mr. Maluchnik was the driving force behind the company and the one most responsible for the company's day-to-day operations. *See* ECF 90 at 18-19 & Attach. B. Importantly, with respect to Chrysler, Mr. Maluchnik recruited Dr. Huenefeld. Dr. Huenefeld, in turn, wrote every prescription listed in Trial Exhibit 43 that forms the basis of Chrysler's claimed loss. *See* 5/19/23 Tr. 26-28, 65-68, 81-82. Mr. Maluchnik's aunt, Loni Peace, herself a Chrysler employee, was principally responsible for recruiting other Chrysler employees to obtain prescriptions for themselves and others. *See* 5/19/23 Tr. 80-81; 5/22/23 Tr. 27-28, 30-31, 34-35.[3] Ms. Peace earned over $400,000 in commissions for her work while Mr. Maluchnik's family earned a total of $700,000 from TheraMedical exclusive of Mr. Maluchnik's earnings. 5/19/23 Tr. 121. Together, the three directly and proximately contributed to Chrysler's claimed loss in a manner entirely unlike Mr. Clay—whose connection to this particular victim's loss was limited to his involvement with TheraMedical generally. Section § 3664(h)'s command that the Court consider the defendant's "level of contribution" to a particular victim's thus does not permit more than a minor apportionment to Mr. Clay of Chrysler's restitution award. Mr. Clay respectfully submits that a 10% apportionment more fairly reflects his contribution to Chrysler's loss.

Mr. Clay's "economic circumstances" counsel further in favor of a 10% apportionment because his assets are minimal. As reflected in the PSIR, Mr. Clay has

---

[3] The Court did not order Dr. Huenefeld or Ms. Peace to pay restitution to Chrysler. The final judgments in their respective cases are attached hereto as Exhibits B and C.

liabilities roughly equal to his assets, a financial profile indicating that he did not have the means to pay a fine within the Guidelines range for his offenses of conviction, PSIR ¶¶ 69-71, and he was sentenced to a lengthy period of incarceration.

In sum, the Court should order Mr. Clay to pay restitution to Chrysler in an amount not to exceed 10% of the company's actual loss ($2,104,979.73), or $210,497.97.

2. IRS. The Court should not order restitution to the IRS. Restitution on Count Four is not mandatory. *See* PSIR ¶ 22; *United States v. Butler*, 297 F.3d 505, 518 (6th Cir. 2002). As Mr. Clay noted in his sentencing memorandum, the consequence for failing to qualify as a public charity after the 5-year probationary period is that the IRS converts the entity to a private foundation and reassesses taxes as if it had been designated a private foundation all along. ECF 90 at 20. The IRS has already assessed back taxes against Mr. Clay relating to the Clay Foundation's charitable status. *See* PSIR ¶ 70.

If the Court does order restitution to the IRS, the amount in the PSIR—$403,481.46—is overstated. PSIR ¶ 89. The majority of that figure—$266,466—stems from the alleged misstatement of income on Mr. Clay's 2014 tax return, conduct for which Mr. Clay was acquitted. *See* ECF 90 at 20; *see also* PSIR ¶ 18 (stating that the "IRS calculated the tax loss" attributable to the conduct charged in Count 4 "to be $137,015.46"). The Court should not assess restitution based on acquitted conduct.

Moreover, even if the court were to consider acquitted conduct, the record does not support the IRS' calculations for the tax loss associated with either of Counts Three or Four. No witness testified to this tax loss at trial, and the substance of Probation's communications with the IRS about the claimed tax loss are not before the Court. *See* PSIR ¶ 6 (disclosing a September 19, 2023 conversation with IRS agent Matthew Miller

7

but not its contents). The trial record suggests that the IRS' unsubstantiated $137,015.46 calculation is overstated; a government witness testified that the classification of the Clay Foundation as a public charity rather than a private foundation resulted in just $35,000 in temporary tax savings in 2014 for Mr. Clay. *See* 5/22/23 Tr. 141.

3. <u>Pfizer Foundation Inc</u>. Mr. Clay recognizes that the Court already has found that the Pfizer Foundation was a victim of Count Four entitled to restitution. *See* Order Denying PSR Objections (Oct. 31, 2023), ECF 98. Mr. Clay nevertheless submits that the Court should exercise its discretion to waive restitution based on this uncharged conduct in light of his economic circumstances. The Sixth Circuit has held that restitution obligations imposed as a condition of supervised release under 18 U.S.C. §§ 3563 or 3583, as any award for Count Four would be, must "conform to the provisions of the VWPA [Victim and Witness Protection Act]." *Butler*, 297 F.3d at 518. The VWPA requires the court to consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(B)(i)(II). Waiving or greatly reducing the amount owed to the Pfizer Foundation is warranted in light of Mr. Clay's financial condition, *see* PSIR ¶¶ 69-71, his multiple dependents (including a wife and three minor children), and his impending lengthy term of incarceration.

At a minimum, the Court should not order the $35,500 recommended by Probation. PSIR ¶ 89. That amount includes $20,500 in matching donations to Stella Bertz Cheer for a Cure. PSIR ¶ 89. In connection with sentencing, the government conceded that Mr. Clay was not convicted of any offenses concerning Cheer for a Cure as

8

a charitable foundation and recommended that Pfizer receive only the $15,000 in matching funds relating to the Clay Foundation, and the Court stated that Mr. Clay's restitution order will not include donations made to Cheer for a Cure. *See* ECF 98.

  4. <u>Blue Cross Blue Shield of Michigan ("BCBS")</u>. The Court should not order restitution to BCBS because the Court has already ordered Dr. Huenefeld to pay the full amount of BCBS' claimed losses. *See* Exhibit B (ordering $47,400.85 in restitution to BCBS); PSIR ¶ 88 (recommending restitution to BCBS for same amount in Mr. Clay's case). A court cannot order restitution in an amount greater than a victim's actual loss. *See supra* p.3, *see also United States v. McDaniel*, 398 F.3d 540, 555 (6th Cir. 2005) ("[T]he restitution statutes do not permit victims to obtain multiple recoveries for the same loss."). That Dr. Huenefeld already was ordered to pay the full amount of restitution owed to BCBS is sensible given that she personally submitted the reimbursed claims at issue and thus contributed fully to the loss. *See* 18 U.S.C. § 3664(h). For that same reason, apportionment to Mr. Clay under § 3664(h) is not warranted.

Dated: November 27, 2023    Respectfully submitted,

              <u>/s/ Richard M. Kerger</u>
              Richard M. Kerger (0015864)
              *Counsel for Defendant, Kevin Clay*

THE KERGER LAW FIRM, LLC
4159 N. Holland-Sylvania Rd., Suite 101
Toledo, OH 43623
Telephone: (419) 255-5990
Fax: (419) 255-5997
rkerger@kergerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard M. Kerger